UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

    Plaintiff,

    v.

R<small>YAN</small> M<small>C</small>I<small>NERNEY</small>,

    Defendant.
_____/

Case No. 18-cv-20584

U.S. D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION TO DISMISS COUNTS FIVE AND SIX OF THE
INDICTMENT [#28]**

**I. I**<small>NTRODUCTION</small>

On August 30, 2018, Defendant Ryan McInerney was indicted by a grand jury on six charges stemming from two separate encounters on July 22, 2014.  *See* ECF No. 1.  The Government alleges that Defendant McInerney, who was a police officer with the Hamtramck Police Department, used his firearm to hit two individuals in the face during two unrelated traffic stops and arrests. *Id.*  Defendant is charged with two counts of deprivation of civil rights under 18 U.S.C. § 242, two counts of filing a false report under 18 U.S.C. §1519, and two counts of using a firearm during a crime of violence under 18 U.S.C. § 924(c). *Id.*

Presently before the Court is Defendant's Motion to Dismiss Counts Five and Six of the Indictment, filed on November 5, 2019.  ECF No. 30.  On December 2,

1

2019, the Government filed its Response. ECF No. 34. On December 30, 2019, Defendant filed his Reply to the Government's Opposition. ECF No. 37. A hearing on this matter was held on June 19, 2020. For the reasons that follow, the Court will DENY WITHOUT PREJUDICE Defendant's Motion to Dismiss Counts Five and Six of the Indictment [#28].

## II. FACTUAL BACKGROUND

In 2014, Defendant Ryan McInerney was a police officer with the Hamtramck Police Department. Defendant was new to the Hamtramck Police Department at the time, although he had been a licensed law enforcement officer in the state of Michigan for over ten years. ECF No. 34, PageID.236. On July 22, 2014, Defendant and senior officer Daniel Kruse were on patrol during the early morning hours.

As to the first incident, Defendant and Kruse pursued a fleeing vehicle after it failed to stop for another officer. ECF No. 30, PageID.206; ECF No. 34, PageID.236. The vehicle pulled over shortly thereafter. Defendant approached the driver's side of the vehicle and ordered the driver, who is identified as "D.M." in the Indictment, to show his hands. While Defendant McInerney states that he then struck D.M.'s face with his fist, the Government alleges that Defendant struck D.M. in the head and face with his service firearm. ECF No. 30, PageID.210; ECF No. 34, PageID.236. This contact purportedly resulted in "an orbital blowout fracture, a nasal fracture, and several facial lacerations that required stitches, among other

2

injuries." ECF No. 34, PageID.236. Additionally, the Government claims that Defendant falsified his report of this incident by stating that he only used his fist to hit D.M., that the force he used was reasonable, and that D.M.'s injuries were minimal. ECF No. 1, PageID.3. This incident forms the basis for Counts One, Three, and Five of the Indictment.

The second incident also occurred on the morning of July 22, 2014 and, while unrelated, bears similarities to the first incident. Here, Defendant McInerney and Kruse engaged in another vehicle pursuit after the officers identified a stolen car. ECF No. 30, PageID.211; ECF No.34, PageID.236. During the pursuit, the stolen vehicle lost power and became inoperable, eventually rolling to a stop. *Id.* Defendant approached the driver's side of the vehicle and ordered the driver, identified in the Indictment as "J.M.," to stop. ECF No. 30, PageID.211. McInerney states that he then "tripped and accidentally discharged one round of his weapon," while J.M. claims that Defendant intentionally fired the shot. *Id.* The parties dispute how J.M. was subsequently placed under arrest; Defendant asserts that the vehicle occupants surrendered, while the Government alleges that Defendant "struck J.M. in the mouth with his service firearm as J.M. sat with his hands in the air." *Id.*; ECF No. 34, PageID.236. J.M.'s purported injuries include "cuts, swelling, and pain inside J.M.'s mouth, and . . . lasting damage to J.M.'s teeth." ECF No. 34, PageID.236. As with the first incident, Defendant was charged with filing a false

3

report regarding the type and degree of force used during this encounter with J.M. ECF No. 1, PageID.4-5. This incident forms the basis for Counts Two, Four, and Six of the Indictment.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12, a criminal defendant may broadly "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). Additionally, a defendant may challenge the legal sufficiency of his indictment by "alleging a defect" or by claiming "that the indictment or information fails to . . . state an offense." Fed. R. Crim. P. 12(b)(3)(B). These motions do not look to the individual facts of a given case but instead present questions of law that a court may decide at the pretrial stage. *See United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009).

### III. DISCUSSION

In the present Motion, Defendant claims that the dismissal of two criminal charges is warranted because the predicate felony offenses have not been established pursuant to a statutory construction analysis. Specifically, Defendant asserts that his two deprivation of civil rights charges under § 242 do not qualify as crimes of violence as required by § 924(c)—the statute forming the basis for Counts Five and Six. The Government disputes this conclusion and argues that the statutory language

of § 242 is internally divisible and, under the modified categorical approach, the Defendant is properly charged with crimes of violence, precluding a dismissal of Counts Five and Six.

### A. The Relevant Underlying Offenses and Statutory Requirements

Defendant McInerney is charged with two counts of assault with a firearm in furtherance of deprivations of rights under color of law, in violation of 18 U.S.C. § 242. The pertinent text of § 242 includes the following language:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon . . . shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242.

The § 242 charges purportedly constitute the predicate offenses for Counts Five and Six, which state that the Defendant "knowingly used, carried, and brandished a firearm during and in relation to a crime of violence." ECF No. 1, PageID.5. Counts Five and Six are brought under 18 U.S.C. § 924(c), which states in relevant part:

> [A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . (i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). The term "crime of violence" is further defined in two subparts:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Within this statute, courts commonly refer to subsection A as the "elements clause" and subsection B as the "residual clause." In 2019, the United States Supreme Court held that § 924(c)(3)(B), the residual clause, was unconstitutionally vague. *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Therefore, the only provision applicable to this Court's analysis of Defendant's argument is subsection A, the elements clause.

### B. The Divisibility of Section 242

Before a court can determine whether an offense qualifies as a crime of violence under § 924(c), it must address the divisibility of the underlying statute. A statute is indivisible if it "sets out a single set of elements [ ] to define a single crime."

*Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). An indivisible statue may list various means of satisfying an element of a crime, "or otherwise said, spells out various factual ways of committing some component of the offense." *Id.* at 2249. (providing the example that if "a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify" as factual means to satisfy one element).

Other statutes like § 242, however, "have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder," as the statute "may list elements in the alternative, and thereby define multiple crimes." *Id.* "Legislatures sometimes enact divisible statutes 'to create two different offenses, one more serious than the other.'" *United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019) (citing *Mathis*, 136 S. Ct. at 2249). With a divisible statute, a court focuses its analysis on the pertinent clause of the statute that sets out the specific offense with which the defendant is charged. *See Burris*, 912 F. 3d at 393.

Here, both parties agree that § 242 is a divisible statute because it contains a graduated penalty structure, delineating at least three separate offenses: (1) a misdemeanor, (2) a 10-year felony, and (3) a capital felony. *See* 18 U.S.C. § 242. Defendant McInerney is charged with willful assault of D.M. and J.M. with a firearm resulting in bodily injury, which means he is alleged to have violated the second portion of the statute: the ten-year felony clause.

The parties disagree, however, about whether the ten-year felony clause is *internally* divisible. The language of the clause relevant to the Defendant states that the charge carries a maximum penalty of ten years "if bodily injury results from the acts committed in violation of this section *or* if such acts include the use, attempted use, or threatened use of a dangerous weapon." 18 U.S.C. § 242 (emphasis added). The conjunctive word "or" in this clause is the basis for the parties' disagreement. The Government claims that the two components of the statute, the "Bodily Injury Clause" and the "Dangerous Weapon Clause," are two separate elements, and therefore two separate offenses. On the other hand, Defendant argues that the clause is not divisible beyond the three-tiered graduated penalty structure, and that the Bodily Injury Clause and Dangerous Weapon Clause are two means to satisfy one offense. The difference between the two arguments informs how a court analyzes the Defendant's charges under the modified categorical approach.

### C. The Modified Categorical Approach

If a statute is indivisible, a court will apply a categorical approach to determine whether the underlying offense is a crime of violence. The categorical approach requires "that we look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *United States v. Camp*, 903 F.3d 594, 599-600 (6th Cir. 2018), cert. denied, 139 S. Ct. 845 (2019) (internal quotation marks and citations omitted). "Under the categorical approach,

courts must assume that the defendant's conviction rested upon nothing more than the least of the acts criminalized and then determine whether even those acts would qualify as a crime of violence under the guidelines." *Id.* (internal quotation marks omitted). In other words, "the offense of conviction, rather than the particular facts of the case, is the focus of the inquiry" under the categorical approach. *Id.*

If the statute is divisible, however, a court will use the modified categorical approach, where "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Mathis*, 136 S. Ct. at 2249.

Here, the Court declines to engage in the modified categorical approach analysis at this point because the Defendant's request is premature. The Court cannot focus its inquiry on "the offense of *conviction*" if Defendant has not yet stood trial or accepted a plea. *Camp*, 903 F.3d at 599-600 (emphasis added). When employing the modified categorical approach, various courts have evaluated other critical documents such as jury instructions or plea agreements because they were at the sentencing stage. *Mathis*, 136 S. Ct. at 2249. In this case, the only available information the Court can review is the Defendant's Indictment. The other pertinent documents do not yet exist at this point in Defendant's criminal case, which prevents

9

this Court from engaging in an informed modified categorial approach analysis. Further, it is possible that McInerney will either accept a plea that does not include Counts Five and Six, or that the jury will choose not to convict on those counts. These potential outcomes, as well as the unavailability of relevant documents, suggests that the Defendant's request at this stage of his case is premature and speculative. Accordingly, Defendant's motion is denied without prejudice.

### IV. CONCLUSION

For the reasons discussed herein, the Court DENIES WITHOUT PREJUDICE Defendant's Motion to Dismiss Counts Five and Six of the Indictment [#28]. Defendant maintains the right to raise his objections to Counts Five and Six if these counts are remaining at the time of sentencing.

**IT IS SO ORDERED.**

_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: July 9, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 9, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager